**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| **WASHINGTON RESEARCH FOUNDATION; and GENENTECH, INC.,**<br><br>　　　　　　**Plaintiffs,**<br><br>　v.<br><br>**SANOFI; SANOFI-AVENTIS U.S. LLC,**<br><br>　　　　　　**Defendants.** | **Civil Action No. 2:15-cv-1143-BJR**<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs and Counterclaim Defendants Washington Research Foundation ("WRF") and Genentech, Inc. ("Genentech") allege that Defendants and Counterclaimants Sanofi and sanofi-aventis U.S. LLC (collectively "Sanofi") have infringed claim 38 of U.S. Patent No. 5,919,651 ("the '651 patent"). Sanofi moves this Court for summary judgment, arguing that pursuant to 35 U.S.C. § 112(d), claim 38 depends from claim 34; and, since Defendants, Plaintiffs agree, cannot be found to have infringed claim 34, they cannot be found to have infringed claim 38 as a matter of law. Plaintiff opposes the motion, arguing that claim 38 is an independent claim; and, therefore, that Defendants need not have infringed claim 34 in order for the Court to find that they have infringed claim 38. Having reviewed the parties' briefs together with all relevant materials, the Court grants summary judgment.

1

## I. BACKGROUND

### A. Procedural History

Plaintiffs initiated this lawsuit on July 17, 2015, alleging that Defendants had infringed one or more of the claims of the '651 patent in violation of 35 U.S.C. § 271. Doc. 1.[1] The '651 patent, entitled "Expression of Polypeptides in Yeast," contains 38 claims relating to recombinant DNA technology for genetically engineering yeast cells to produce useful proteins ("polypeptides") that are ordinarily exogenous to, and not normally made by, yeast cells. '651 patent, Doc. 69-1, col.1 ll.19-22, col.4 ll.-20.

In January 2017, the parties completed claim construction briefing in anticipation of a March 31, 2017 *Markman* hearing. Docs. 50, 52-57. In February 2017, however, the parties filed a stipulation and covenant not to sue, narrowing the case to a single disputed claim. Doc. 59. Specifically, Defendants represented that their allegedly-infringing product—the protein rasburicase, which Defendants sell in the United States under the trade name Elitek—has always been manufactured outside of the United States; that the yeast strain used to manufacture rasburicase was transformed in 1991, eight years before the '651 patent issued; and that the strain of transformed yeast cells and the DNA vector used to manufacture rasburicase has never resided in the United States. *Id.* at 2. In reliance on Defendants' representations, Plaintiffs agreed, in relevant part, to not assert any claims or causes of action alleging that Defendants have directly or indirectly infringed any of the '651 patent's claims with the exception of claim 38. *Id.*[2] At the parties' request, the Court vacated all previously-set dates, and issued a briefing

---

[1] In August 2016, the Court dismissed for lack of personal jurisdiction former Defendant Sanofi-Synthelabo LLC. Doc. 44.

[2] Specifically, Plaintiffs agreed "to provide a covenant not to sue, and not to assert any claims or causes of action alleging that Defendants have directly or indirectly infringed any of claims 1-5, 9-10, 12-15, 17-19, 23-30, 34-35, or 37 of the '651 patent by making, using, offering for sale, selling, and/or importing [r]asburicase." Doc. 59 at 2.

schedule for the instant motion for summary judgment of noninfringement with respect to claim 38. Doc. 60.

**B. The Asserted Claim**

The '651 patent was issued on July 6, 1999. '651 patent, Doc. 69-1. The patent is directed to methods of producing useful proteins in yeast cells using recombinant DNA technology. *Id.* at col.1 ll.19-22, col.4 ll.-20.[3] According to the patent's specification, recombinant DNA technology allows for the microbial production of proteins that can be used in the preparation of vaccines, immune modulators, and antibodies for diagnostic and drug-targeting applications. *Id.* at col. 1 ll.41-47. Defendants' accused product, Elitek (rasburicase), was approved by the FDA in July 2002 as a treatment to reduce uric acid in patients receiving chemotherapy. Doc. 65 at 12. According to Defendants, rasburicase is made in yeast cells that have been transformed with a DNA vector containing the rasburicase gene. Doc. 65 at 12.

Plaintiffs allege that Defendants have infringed claim 38. Claim 38 recites as follows:

> A process of producing a polypeptide comprising culturing the yeast strain of claim 34, and recovering said polypeptide.

*Id.* at col.18 ll.24-26. Claim 34 recites as follows:

> A yeast strain capable of expressing a polypeptide ordinarily exogenous to yeast produced by a process comprising transforming said yeast strain with a DNA transfer vector comprising [certain structural features].

---

[3] Recombinant DNA technology refers generally to the process of taking a piece of one strand of DNA and combining it with another strand of DNA, which is then able to create a new strand of DNA. *See id.* at col.1 ll.33-67. The '651 patent's specification explains that plasmid, a non-chromosomal loop of double-stranded DNA, is encoded to contain one or more characteristics and to reproduce in "daughter cells." *Id.* Plasmids can be "cleaved," with each piece recognizing a different site on the plasmid DNA. *Id.* at col. 1 ll. 58-61. Thereafter, genes or gene fragments can be inserted into the plasmid at the cleavage site. *Id.* at col.1 ll. 61-64. The DNA recombination is performed outside of the cell, and the resulting recombinant plasmid is introduced into the cell by a process known as "transformation." *Id.* at col. 1 ll.64-66. These plasmids are referred to as "DNA transfer vectors." *Id.* at col. 2 ll.36-39. The transfer vectors contain "a structural gene intended for expression" and a "promoter and associated controls" such that the cells can actually produce the desired characteristic. *Id.* at col. 2 ll.36-46.

3

*Id.* at col.17 ll.19-col. 18 ll.10.

Defendants have moved for summary judgment, arguing that pursuant to 35 U.S.C. § 112(d), claim 38 is dependent upon claim 34. A party who "does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989). There is no contention that Defendants have infringed claim 34; thus, Defendants argue, they cannot be found to have infringed claim 38 as a matter of law. Plaintiffs oppose the motion, arguing that claim 38 is an independent claim; and, therefore, that the Court does not need to find that Defendants have infringed claim 34 in order for the Court to find that Defendants have infringed claim 38.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Infringement

An infringement analysis generally involves two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Courts first determine "the meaning and scope of the patent claims asserted to be infringed," and then "compar[e] the properly construed claims to the device accused of infringing." *Id*. In this matter,

however, the parties do not dispute the meaning of any particular term of claim 38, nor do they dispute whether, scientifically-speaking, Defendants' accused product infringes claim 38. Instead, the sole issue before the Court is whether claim 38 is a dependent or an independent claim, which is a matter of law. *Monsanto Co. v. Syngenta Seeds, Inc.* 503 F.3d 1352, 1356 (2007).

35 U.S.C. § 112(d) sets out the requirements for when a claim is dependent upon another. The statute provides that a claim is dependent upon another if the claim: (1) refers to "a claim previously set forth" and (2) "specif[ies] a further limitation of the subject matter claimed." 35 U.S.C. § 112(d); *see also Monsanto*, 503 F.3d at 1357 ("To establish whether a claim is dependent upon another, this court examines if the new claim both refers to an earlier claim and further limits that referent."). A dependent claim includes all of the limitations of the independent claim on which it depends. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989). Thus, a party who does not infringe an independent claim cannot infringe a claim dependent on that claim. *Id*. "In interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

### III. DISCUSSION

The parties agree that claim 34 is a product-by-process claim directed to a genetically-engineered yeast strain that is capable of expressing a certain polypeptide; and that claim 38 is a process or method claim directed to "culturing" the yeast strain of claim 34 (by growing it in a nutrient-rich environment), and "producing" and "recovering" the polypeptide. Defs.' Mot., Doc. 65 at 9, 16, 23; Pls.' Opp., Doc. 68 at 1, 5. There is further no dispute that claim 38 references claim 34, thereby satisfying the first prong of 35 U.S.C. § 112(d). Pls.' Opp., Doc. 68 at 5.

5

The parties vigorously dispute, however, whether, according to § 112(d), claim 38 specifies a further limitation of the subject matter of claim 34, *i.e.*, the yeast strain recited in claim 34. Defendants maintain that it does. Specifically, Defendants contend that claim 38's steps of "culturing" the yeast strain and "producing" and "recovering" the polypeptide further limit the yeast strain, which, in claim 34, is only "capable" of producing a polypeptide. Doc. 65 at 24-25. Defendants assert that the yeast strain of claim 34 is a "condition precedent" to claim 38: "Without the transformed yeast strain of claim 34, the additional process steps of claim 38 would be meaningless (if not impossible)[.]" *Id.* Plaintiffs, in their opposition, maintain that claim 38 does not further limit claim 34. Doc. 68. Specifically, Plaintiffs contend, claim 38 does not further limit or otherwise define "either (i) the yeast strain made by claim 34 or (ii) the process of making the yeast strain recited in claim 34;" thus, Plaintiffs argue, claim 38 is not dependent upon claim 34. Doc. 76 at 4. Defendants, in response, argue that Plaintiffs' "narrow reading of § 112(d)" is unsupported by the relevant case law. Doc. 70 at 9, 14; Doc. 65 at 19-24. The Court agrees and finds that *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352 (Fed. Cir. 2007), is especially instructive. Before examining the relevant jurisprudence, the Court examines the claims of the '651 patent. *See Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

**A. The '651 Patent's Claims**

The parties compare the wording of claim 38 to that of other claims of the '651 patent. *See* Doc. 68 at 4-6; Doc. 70 at 12; Doc. 76 at 7-8; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (claims must be viewed "in the context of the entire patent"). In so doing, Plaintiffs maintain that claim 38 is drafted similarly to the undisputedly independent claims (claims 1, 12, 19, and 34), and differently from the undisputedly dependent claims (claims 3, 13, and 30, for example). Doc. 68 at 4-6. Plaintiffs would thus have the Court believe that claim 38 is

6

anomalous among the patent's claims that reference another claim. It is not. Instead, claim 38 is nearly identical to claims 10 and 28; and claim 38 fits within the overall drafting of the claims. '651 patent, Doc. 69-1, col. 15 ll.18-col.18 ll.11.[4] Further, claim 38 is not drafted similarly to the undisputedly independent claims. *See id.*[5]

Plaintiffs are correct that claim 38 does not follow the format of claims 35-37, which are undisputedly dependent upon claim 34, and which follow the typical dependent format by beginning: "The yeast strain of claim 34, wherein…[.]" However, a claim's status as dependent or independent is determined by "the substance of the claim in light of the language of § 112[(d)], and not on the form alone." *Monsanto*, 503 F.3d at 1357-58 (citing Manual of Patent Examining Procedure § 608.01(m), (n); and 37 C.F.R. § 1.75)).

**B. Claim 38's Substance in Light of the Language of § 112(d)—Relevant Case Law**

In deciding the same issue, the Federal Circuit in *Monsanto* was confronted with a claim

---

[4] The nearly identical claims recite as follows:

| **Claim 10**: | **Claim 28**: | **Claim 38** [at issue here]: |
|---|---|---|
| A process of producing a polypeptide comprising culturing a yeast strain transformed by the process of claim 1, and recovering said polypeptide. | A process of producing a polypeptide comprising transforming a yeast strain with the DNA expression vector of claim 12, culturing the transformed yeast strain, and recovering said polypeptide. | A process of producing a polypeptide comprising culturing the yeast strain of claim 34, and recovering said polypeptide. |

The claims of the '651 patent were drafted in the following manner: (i) an independent claim (1; 12; 29; 34, respectively); (ii) a number of referencing claims that are follow the typical dependent format (2-9, 11; 13-27; 30-33, respectively); (iii) a claim that begins with the phrase, "a process of producing a polypeptide comprising…" (10; 28; 38, respectively). *Cf. CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1327 (Fed. Cir. 2013), *aff'd*, 134 S. Ct. 2347 (2014) (Moore, J., dissenting in part) (citing *O'Reilly v. Morse,* 56 U.S. 62 (1853)) (in drafting claims, "it is customary to start with broad claims and then draft claims of progressively narrower scope").

[5] The undisputedly independent claims recite as follows:

| **Claim 1**: | **Claim 12**: | **Claim 29**: | **Claim 34**: |
|---|---|---|---|
| A process of forming a transformant of a yeast strain capable of expressing a polypeptide ordinarily exogenous to yeast, comprising transforming said yeast strain with a DNA transfer vector that comprises [certain structural features]. | A DNA expression vector, capable in a transformant strain of yeast of expressing a polypeptide ordinarily exogenous to yeast, said vector comprising [certain structural features]. | A yeast strain comprising a gene encoding a polypeptide ordinarily exogenous to yeast under the control of a yeast promoter [with certain structural features]. | A yeast strain capable of expressing a polypeptide ordinarily exogenous to yeast produced by a process comprising transforming said yeast strain with a DNA transfer vector comprising [certain structural features]. |

7

that was drafted in a similar, "unusual format." *See id.* at 1358. In relevant part, Plaintiffs Monsanto and Dekalb alleged that Defendants had used a patented seed acquired from Plaintiffs' licensees "to produce further progeny containing" the trait that the seed was genetically-engineered to contain. 503 F.3d at 1355. The relevant claim at issue, claim 4, recites as follows:

> A process comprising obtaining progeny from a fertile transgenic plant obtained by the process of claim 1 which comprise said DNA.

Id. at 1355. The parties agreed that claim 1 was an independent process claim that recites "a three-step process for generating an original [] fertile transgenic plant containing DNA that provides herbicide resistance." *Id.* at 1357. Specifically, claim 1 recites as follows:

> A process for producing a fertile transgenic…plant comprising [three enumerated steps].

The parties further agreed that Defendants had not performed the three steps recited in claim 1; and, therefore, that Defendants had not infringed claim 1. Id. at 1359. In fact, it was Plaintiffs who had performed the three steps listed in claim 1, and Plaintiffs had done so before the relevant patent issued. *Id.* at 1355. In construing the claim terms, the district court found that claim 4 was dependent upon claim 1. Id. at 1357. Specifically, the district court construed claim 4 as "further adding a fourth step of obtaining progeny from" the plant produced by the process of claim 1. *Id.* On appeal, Plaintiffs argued that claim 4 was, "by itself a single-step process ([the] process of obtaining progeny)," and that claim 4's reference to claim 1 referred only "to the novel starting material (a fertile transgenic plant previously obtained using the claim 1 process) of the new process in claim 4." *Id.* In support of their argument, Plaintiffs asserted that the format of claim 4 differed from that of the customary dependent format. *Id.*

The Federal Circuit agreed that claim 4 was drafted "in a somewhat unusual format." Id. at 1358. Nevertheless, "claim 4 is dependent from claim 1," the Circuit found, "because it only

8

stands if all three steps recited in claim 1 have been performed. In other words, the additional fourth step of obtaining progeny *depends* on the performance of the process comprising the three steps recited in claim 1 for obtaining a fertile transgenic plant." *Id.* (emphasis in original). Thus, the Circuit found, "claim 4 clearly references another claim, not simply a starting material." *Id.* at 1358. Citing 35 U.S.C. § 112(d), the Circuit reasoned that claim 4 "expressly recites the process of claim 1 and specifically requires" the product "obtained by the performance of the steps in claim 1." *Id.* Further, the Circuit explained, claim 4 "includes the additional step of obtaining progeny." *Id.* This additional step, the Circuit found, constituted a limitation upon the subject matter of claim 1. *Id.*

In the instant case, Plaintiffs attempt to distinguish *Monsanto* by asserting that in *Monsanto*, both claims were process claims, while here, claims 38 and 34 are of "different statutory classes:" Claim 34 is a product-by-process claim and claim 38 is a process claim. Doc. 68 at 7, 12-13, 18, 20-23; Doc. 76 at 5-6 (citing *Amgen v. Hospira*, 232 F. Supp. 3d 621, 627 (D. Del. 2017)). In *Monsanto*, Plaintiff contends, the Circuit interpreted claim 4 as a fourth step "in one continual process" that begins in claim 1, "rather than a separate process that used the starting material obtained from claim 1." *Id.* at 21 (citing 503 F.3d at 1358). Here, Plaintiffs contend, claim 38 "merely references 'the yeast strain of claim 34' as the starting material to use in the method of claim 38[.]" Doc. 68 at 12.

However, the *Monsanto* Court addressed this argument and found it "irrelevant." 503 F.3d at 1358. On appeal, Plaintiffs contended that "claim 4 is claiming a process using the starting material of a product [that] has been made by the process" of the three steps recited in claim 1. 503 F.3d at 1358. Even if the inverse were true (and claim 4 was a product-by-process claim), the Circuit explained, what is dispositive is that Defendants "would still have to perform the steps of

9

the process of claim 1 to infringe the product-by-process claim, *i.e.* claim 4 would only have meaning according to the incorporation of the limitations of claim 1." *Id.* Given that claim 1 only claims the process of making the plant, claim 4, which claims the process of obtaining progeny from that plant, also requires, of course, the actual plant. Thus, for Plaintiffs here, the statutory class distinction is, at best, one without a difference; and, at worst, it makes claim 38's dependency on claim 34 all the more apparent because claim 38 has meaning *solely* according to the incorporation of claim 34. *Cf. id.* at 1357 (noting that claim 4 "might have used express language to clarify that it only invoked the product of the process in claim 1 as a starting material, but did not do so.").[6]

Plaintiffs additionally, or alternatively, contend that claim 38 should be interpreted to reference the yeast strain of claim 34 "as a shorthand for the product 'to use in' the separate method of claim 38, 'not to further define' that yeast strain." *Id*. at 22 (quoting *Ex Parte Gillis*, 2013 WL 860588, at *2 (PTAB Mar. 4, 2013). Plaintiffs assert that claim 38's steps "do not relate to the *creation* of the yeast strain, and instead relate to the *production of a polypeptide*." *Id*. at 18 (emphasis in original). Claim 38 "recites steps to be performed on the yeast strain of claim 34, but not steps that further limit that yeast strain beyond the properties set forth in claim 34 itself." *Id*.

Plaintiffs' interpretation of § 112(d)'s "further limit" language is not in accordance with binding precedent. As explained above, claim 4 in *Monsanto* did not "further define" the process

---

[6] Thus, Plaintiffs' reliance on *Amgen Inc. v. Hospira, Inc.*, 232 F. Supp. 3d 621 (D. Del. 2017), is mistaken. In relevant part, at issue in *Hospira* was whether claim 27 depended from claim 1. *Id*. at 627. Claim 27 recited: "A method for obtaining an erythropoietin composition having [certain characteristics] comprising preparing a mixture of two or more erythropoietin isoforms of claim 1." Claim 1 recited: "A isolated biologically active erythropoietin isoform having [certain characteristics]." In finding claim 27 independent, the Court noted that "claim 27 is a method claim, while claim 1 is a composition claim," and that "the prosecution history tends to show that claim 27 was treated as an independent claim during prosecution." *Id*. Here, however, as described *infra*, the prosecution history tends to show that claim 38 was treated as dependent. Further, claim 38 does not "prepare a mixture" of the yeast strain of claim 34; instead, it cultures the yeast strain to produce the polypeptide and recovers the polypeptide.

10

of creating the transgenic plant recited in claim 1, nor the resulting transgenic plant. 503 F.3d at 1354-1358. Similarly, the Circuit in *Amgen v. Hoffman-La Roche Ltd*, 580 F.3d 1340, 1383-84 (Fed. Cir. 2009), noted that a nearly-identical claim, claim 7, depends from its referent claims, claims 1 through 6. For ease of reference, the Court has reproduced the claims below:

| **Claim 38** [at issue here] A process of producing a polypeptide comprising culturing the yeast strain of claim 34, and recovering said polypeptide. | **Claim 7 in *Amgen*** A process for producing erythropoietin comprising the step of culturing, under suitable nutrient conditions, vertebrate cells according to claim 1, 2, 3, 4, 5, or 6. | **Claim 4 in *Monsanto*** A process comprising obtaining progeny from a fertile transgenic plant obtained by the process of claim 1 which comprise said DNA. |
|---|---|---|

As in *Amgen*, claim 38 cultures the product-subject matter of the referent claim (by growing it in a nutrient-rich environment), thereby transforming that product from one *capable* of producing a desired trait into a product that actually produces the desired trait. *See* 580 F.3d at 1383-84. As in *Monsanto*, claim 38 actually recovers what the referent claim is only capable of producing. *See Monsanto*, 503 F.3d at 1354-1358. Thus, claim 38 only stands if all of the steps of claim 34 have been performed. *See id*. Accordingly, the Court finds that claim 38 is dependent upon claim 34 pursuant to 35 U.S.C. § 112(d). *See id*.; *Hoffman-La Roche*, 580 F.3d at 1383-84; *see also Spectrum Pharmaceuticals, Inc. v. Sandoz Inc.*, 2013 WL 6865692, at *21-22 (D. Nev. Dec. 31, 2013) (finding that despite claims having been written in "unusual format," referencing claims were dependent upon their respective referent claims where the composition in each referencing claim "can be created only after the composition covered by [the referent claim] is first created") (citing *Monsanto*, 503 F.3d at 1357); *Maury Microwave, Inc. v. Focus Microwaves, Inc.*, 2012 WL 9161988, at *32-33 (C. D. Cal. July 30, 2012) (finding referencing claims dependent upon referent claims where the steps of the referent claims had to be performed before the step in the referencing claim could begin); *accord 1 Energy Solutions, Inc. v. Nicholas Holiday*, 2014 WL 12589113, at

11

*4 (C.D. Cal. July 9, 2014) (dependent claims are those that are "limited by another claim").[7]

## C. Treatment of Claim 38 During the '651 Patent's Prosecution History

The Court's finding that claim 38 is a dependent claim is further reinforced by the patent's prosecution history. Specifically, WRF's statements concerning—and the Examiner's treatment of—claim 38 during the '651 patent's prosecution history support the finding that claim 38 is a dependent claim. Doc. 65 at 9-11, 12, 19, 25-27.

### 1. Fee Determination and the Examiner's Index of Claims

As Defendants point out, for fee determination purposes, WRF twice informed the Patent and Trademark Office ("PTO") that of the patent's 38 claims, only four of were independent. *Id*. at 10-11 (citing Doc. 69-1 at 41, 66, Amendment Transmittal Letters for Application Serial No. 08/465,927, dated Oct. 10, 1997 and July 6, 1998, respectively). There is "no real dispute," Defendants contend, that these four claims correspond to Plaintiffs' cancelled claims 16, 27, 44, and 49, which themselves correspond to issued claims 1, 12, 29, and 34, respectively, because these are the only four claims that do not reference another claim. *Id*. Plaintiffs, in their opposition,

---

[7] The additional cases on which Plaintiffs rely do not convince the Court otherwise. In *Ex Parte Eisenhardt*, 2013 WL 4575055, at *3 (PTAB Aug. 27, 2013), in relevant part, the Patent Trial and Appeal Board ("PTAB"), examined claim 18. Claim 18 is directed to: "A data storage unit for a system according to claim 1." *Id*. Claim 1, in turn, recited: "A system for measuring a [certain] concentration in a body fluid sample, comprising [certain characteristics]." *Id*. at *1. The Board found that claim 18's reference to claim 1, "merely describes the intended use of the claimed data storage unit." *Id*. at *3. The system recited in claim 1, the Board found, was not further "defined" or "required" by claim 18. *Id*. Here, however, claim 38 specifically requires the product claimed by claim 34 (the yeast strain), and further defines the yeast strain by culturing it to produce polypeptide, and then recovering the polypeptide.

Moreover, *Eisenhardt*—and Plaintiffs—rely in part on *Ex Parte Gillis*, 2013 WL 860588, at *2-*4 (PTAB Mar. 4, 2013), which is not in accordance with *Monsanto*, 503 F.3d at 1354-58. In *Ex Parte Gillis*, the Examiner had rejected claim 8 for "failing to include all the limitations of the claims upon which it depends[, claims 1, 2, 3, and 4] and for failing to further limit the subject matter of [these] claims[.]" 2013 WL 860588, at *2. Claim 8 recites: "A method of treating an airway using an implant system as defined in claim 1, 2, 3, 4." *Id*. In refusing to sustain the Examiner's rejection, the PTAB stated that:

> Claim 8 recites a statutory class ('A method'), a preamble ('…treating an airway'), and at least one step ('using…'). Claim 8 refers to claims 1-4 as shorthand for the structure to use in the method, not to further define the structure claims. Such are clues that a claim is independent.

In light of *Monsanto*, this Court disagrees. *See Monsanto*, 508 F.3d at 1354-58.

do not address these transmittal letters. *See* Doc. 68 at 23-26 (addressing fee determination issues as they relate to the Examiner only); Doc. 70 at 8 (same).

The Court takes note of the fact that the Examiner, in accordance with the Manual of Patent Examining Procedure ("MPEP") in effect at the time, was required to designate independent claims "in the Index of Claims by encircling the claim number in red ink." Doc. 64 at 253, MPEP § 719.04 (6th ed., Jul. 1997); *see Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997) (the MPEP "is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates"). When examining the '651 patent, the Examiner only circled issued claims 1, 12, 29, and 34—the only four claims that do not reference another claim—and did not ever circle claim 38 over the course of the prosecution history. Doc. 64 at 44, Index of Claim for Application Serial No. 08/465,927, initially dated Jul. 18, 1995; *see* MPEP § 719.04 (6th ed., Jul. 1997) (directing that the Index of Claims "be kept up to date so as to be a reliable index of all claims standing in a case, and of the amendment in which the claims are to be found"). Plaintiffs correctly point out that Examiners initially consider dependent any claim that references another claim, and that the Examiner did not "affirmatively analyze" whether claim 38 was dependent upon claim 34. Doc. 68 at 24-25 (citing MPEP § 608.01(n)). However, had the Examiner, at any point during the prosecution history, considered claim 38 to be an improper dependent claim, *i.e.*, an independent claim, he was obligated to object to the claim and require cancellation or Plaintiffs' rewriting. MPEP § 608.01(n). The Examiner did not do so.

The Court finds that the Examiner's actions (and lack thereof), when combined with Plaintiffs' transmittal letters, support the finding that claim 38 is a dependent claim. *See Spectrum Pharmaceuticals, Inc. v. Sandoz Inc.*, 2013 WL 6865692, at *22 (D. Nev. Dec. 31, 2013)

13

(prosecution history supported finding that claims 13 and 14 were dependent where the patent application "expressly provides for fourteen total claims of which only three are independent claims" and "[n]either party disputes that these three independent claims consist of claim 1, claim 5, and claim 10"); *Novartis Pharmaceuticals Corp. v. Actavis, Inc.*, 2013 WL 6142747 (D. Del. Nov. 21, 2013) (during prosecution history, "the fact that Plaintiffs did not consider the claims at issue as independent when making payment to the PTO is at least *some* evidence suggesting that Plaintiffs themselves recognized that the claims are dependent claims") (emphasis in original); *Maury Microwave, Inc. v. Focus Microwaves, Inc.*, 2012 WL 9161988 (C.D. Cal. Jul. 30, 2012) (prosecution history supported finding that two claims were dependent where applicants "changed what were independent claims into dependent claims," and examiner recorded the number of independent claims as falling from "four to one").

    2. <u>WRF's Statements Concerning Related Patents</u>

Defendants assert that WRF informed the PTO that then-pending claim 38 "'generally corresponded' to" claim 31 of a related patent ("the '676 patent"). Doc. 65 at 11, 27 (quoting Doc. 64 at 28-33, Amendment A and Response to Paper No. 7 for Application Serial No. 08/465,927). WRF, Defendants continue, identified claim 31 as a "'dependent' claim." Doc. 65 at 12 (quoting Doc. 64 at 87-88, Supplemental Amendment for Application Serial No. 08/474,333). Further, Defendants assert, claim 31 of the '676 patent and claim 38 at issue here are "virtually identical." Doc. 65 at 11. Plaintiffs, in their opposition, argue that the Court should "give little weight to this one isolated statement concerning a different patent." Doc. 68 at 26. Moreover, Plaintiffs assert, at another point during prosecution, WRF referred to a different, ultimately-cancelled claim that was "similar to issued claim 38 in both form and substance," and which WRF stated was an "independent claim." *Id.* at 25-26 (citing Doc. 69-1, Ex. 5, comparing claim 38 to cancelled claim

56). Defendants, in response, contend that WRF's asserted statement concerning cancelled claim 56 was not made during the prosecution of the '651 patent; instead, it was made "in an abandoned patent application that was five applications up the chain from the prosecution of the '651 patent, and more than four years before the filing of the '651 patent." Doc. 70 at 15 (citing Doc.69-1, Ex. 5, WRF's Mar. 29, 1991 Amendment to App. No. 07/349,918, filed May 9, 1989).

The parties' asserted claims, as compared to the claim at issue here, recite as follows:

| **Claim 38 of the '651 patent** [at issue here] | **Claim 31 of the '676 patent** [Defendants' comparison] | **Cancelled claim 65** [Plaintiffs' comparison] |
|---|---|---|
| A process of producing a polypeptide comprising culturing the yeast strain of claim 34, and recovering said polypeptide. | A method of producing a biocompetent polypeptide ordinarily exogenous to yeast comprising culturing a yeast strain of claim 28 and recovering said polypeptide. | A method of producing a biocompetent polypeptide ordinarily exogenous to yeast, by culturing a yeast strain transformed by the process of claim 13. |

Plaintiffs do not provide authority for their simultaneous contentions that the Court should afford "little weight" to the fact that during the prosecution history of the patent at issue, WRF considered claim 31 a dependent claim, but afford at least some weight to the fact that during the prosecution of an abandoned patent, WRF considered cancelled claim 56 independent. In any event, claim 56 is materially different from claim 38 and claim 31: it does not contain the phrase, "and recovering said polypeptide." *See Monsanto Co. v. Syngenta Seeds, Inc.* 503 F.3d 1352, 1358 (Fed. Cir. 2007) (referencing claim's process of "obtaining progeny" from a plant whose creation process is recited in referent claim, constituted limitation of the referent claim). Thus, the prosecution history is not, as Plaintiffs maintain, "ambiguous" because it is not necessarily contradictory to consider cancelled claim 56 independent while considering claims 38 and 31 dependent. *Cf. Abbott Labs v. Sandoz, Inc.* 566 F.3d 1282, 1289 (Fed. Cir. 2009) ("[O]wing in part to the inherent ambiguities of prosecution history, the doctrine of prosecution disclaimer only

15

applies to unambiguous disavowals"); *Monsanto*, 503 F.3d at 1358 (prosecution history provided "additional insight" into whether claim was dependent where applicant amended original claim after prosecution closed and "carefully explained that its amendments 'do not introduce new matter.'").

## IV. CONCLUSION

"It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed[.]" *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989). Here, there is no dispute that Defendants' rasburicase does not infringe claim 34 according to 35 U.S.C. § 271. The Court having found claim 38 to be a dependent claim, Defendants cannot, therefore, be found to have infringed claim 38 as a matter of law. *See id.*; *Wahpeton* 870 F.2d at 1552. Accordingly, Defendants motion for summary judgment is HEREBY GRANTED with respect to claim 38 of the '651 patent.

Dated this 2nd day of February, 2018.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE